IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

SHAWNA HESS                                                                    PLAINTIFF

v.                              CASE NO.: 5:11-cv-00249KGB

CAROL ABELS, Individually, and in her
Official Capacity as an employee of the City of Stuttgart;
TOMMY LAWSON, Individually, and in his Official Capacity
as an employee of the city of Stuttgart, MARIANNE MAYNARD,
Individually, and in her Official Capacity as Mayor of the City
of Stuttgart, and THE CITY OF STUTTGART                          DEFENDANTS

## OPINION AND ORDER

Plaintiff Shawna Hess brings this action pursuant to 42 U.S.C. § 1983 and the Arkansas

Civil Rights Act, alleging violations of her rights under the Fourth, Fifth, and Fourteenth

Amendments, and pursuant to Section 504 of the Rehabilitation Act of 1973. Ms. Hess has filed

suit against her former employers Carol Ables[1] and Tommy Lawson, individually and in their

official capacity as employees of the City of Stuttgart, Arkansas; Marianne Maynard,[2]

individually and in her official capacity as mayor of the City of Stuttgart; and the City of

Stuttgart. Defendants move for summary judgment (Dkt. No. 18). Ms. Hess has responded

(Dkt. No. 23), and defendants have replied (Dkt. No. 28). For the reasons discussed below,

defendants' motion is granted.

---

[1] Based on the pleadings and deposition submitted by Ms. Ables, the correct spelling of her name is Carol Ables.

[2] Based on an affidavit and deposition submitted by Ms. Maynard, the correct spelling of her name is Marianne Maynard.

## I.    Factual Background

The following facts are undisputed.  Ms. Hess began working for the City of Stuttgart in the Water Department as a meter reader on February 15, 2008.  As a condition of her employment, Ms. Hess signed an acknowledgement that her employment was at-will. (Dkt. No. 18, Ex. B).  However, she disputes that she was an at-will employee. (Dkt. No. 24, ¶ 2).  Ms. Hess signed an acknowledgment, admitting that she received a copy of the Personnel Policy Manual which includes Ordinance 1629 and other listed drug policies.

On February 23, 2010, State Trooper David Chastain was running surveillance at a Wal-Mart parking lot for possible drug distribution.  He was observing a truck owned by Donnie Freeman, a suspected drug distributor and former boyfriend of Ms. Hess.  Ms. Hess was on duty that day and in a City of Stuttgart vehicle. Trooper Chastain observed Ms. Hess opening the door to Mr. Freeman's truck at the Wal-Mart parking lot. Trooper Chastain approached Ms. Hess and asked her what she was doing in Mr. Freeman's truck.  The details of this encounter are in dispute. Ms. Hess alleges that she was there to pick up some tax documents that she needed to complete her taxes.  (Dkt. No. 24, ¶ 9).  Trooper Chastain alleges that Ms. Hess confessed that "Donnie Freeman had called her and told her that he had something for her." (Dkt. No. 20, ¶ 22). According to Trooper Chastain, Ms. Hess "opened the door of Freeman's truck and showed [him] what [he] believed to be crystal methamphetamines." (Dkt. No. 20, ¶ 24).

The parties agree that, ultimately, Trooper Chastain told Ms. Hess to get in her "truck and go back to work but to be at his office later on that day."  (Dkt. No. 24, ¶ 11).

The parties also agree that Trooper Chastain called Ms. Hess's direct supervisor and manager of the Water and Sewer Department, Tommy Lawson, to request that Mr. Lawson allow Ms. Hess to come in for an interview. Mr. Lawson told Ms. Hess to go to Officer Chastain's

office for an interview.   The interview occurred sometime after lunch, at approximately one

o'clock.  Trooper Chastain sought information about Mr. Freeman.

Ms. Hess told Trooper Chastain that she did not know anything about Mr. Freeman or

any drug distribution, and that she was not a drug user.  During the interview, Trooper Chastain

requested that Ms. Hess take a drug test.  Ms. Hess refused.  Ms. Hess does not deny that she told

Trooper Chastain that she would flunk the drug test. (Dkt. No. 24, ¶ 16).  Ms. Hess claims that

she stated she would "flunk it" so that she would be allowed to leave the interview.  (Dkt. No.

25; Dkt. No. 20, Ex. F at 20:7 to 20:20).

Trooper Chastain notified Mr. Lawson and Ms. Ables, the personnel director for the City

of Stuttgart, about the events that day.  Mr. Lawson told Ms. Ables what Trooper Chastain told

him.

Mr. Lawson terminated Ms. Hess that day.   The parties dispute the basis for Mr.

Lawson's decision.  Based on Ms. Hess's deposition testimony submitted by Ms. Hess with her

response, Ms. Hess returned to her place of employment after leaving the interview with Trooper

Chastain.  When she arrived, Mr. Lawson called her into the other room and fired her.  She

testified in her deposition that Mr. Lawson told her he had to let her go because she "refused the

drug test."  She testified that, after being fired, she asked what if she would have her own drug

test performed.  Ms. Hess claims that Mr. Lawson "said they'd have to honor it. . . ." Ms. Hess

admits that Mr. Lawson did not tell her she would get her job back if she came in with a clean

test.  However, she understood his comment to mean that she would get her job back if her test

was clean.  (Dkt. No. 24, Ex. F at 21:24 to 23:8).  Ms. Hess had her own drug test performed the

day after she was terminated which showed that she was clean. (Dkt. No. 24, ¶ 16, Ex. F at 23:9

to 24:22).  She presented those results to Mr. Lawson and Ms. Ables; defendants did not alter the

decision made regarding her employment.

Defendants also dispute Ms. Hess's version of these events.  The parties agree Trooper

Chastain prepared a written statement that he sent to Mr. Lawson and Ms. Ables sometime that

day.[3]  The written statement is attached to the employment termination notice.  The employment

termination notice states that the reason for the termination is Ms. Hess's "failure to take a drug

test requested by State Police" and also states "see attached statement."  (Dkt. No. 18, Ex. M).

There is also a "Notice of Employee Separation" which states that the reason for discharge was

for "violation of rules or policies." (Dkt. No. 18, Ex. L).[4]  Further, the Notice states that the

"employee was caught by the State Police in [a] Wal-Mart parking lot attempting to remove

crystal meth from someone's truck who had called her to come and get it. She refused to take a

drug test from State Police saying she could not take it because she would flunk it." (Dkt. No. 18,

Ex. L).

Defendants dispute Ms. Hess's claim of a post-termination discussion with Mr. Lawson

regarding her own drug test.  Mr. Lawson maintains he did not request Ms. Hess take a drug test

and that she did not offer to take a drug test for him. (Dkt. No. 18, Ex. K at 12:1 to 12:7).  He

further maintains she never stated that she was going to take a test until she brought in the

---

[3]  Ms. Hess objects to Trooper Chastain's statement as hearsay.  Rule 56(c)(2) of the Federal Rules of Civil Procedure states: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *See Gannon International, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012).  The Court overrules the objection to Trooper Chastain's statement.  The statement is attached to a business record of defendants, and the acts and statements of Ms. Hess recounted by Trooper Chastain in the statement, if offered by defendants, would constitute admissions by a party opponent.  Further, both parties presented Trooper Chastain's deposition testimony to the Court in support of their submissions.  It is likely he will be a witness at trial for one or both parties.

[4]  Ms. Hess also objects to the Notice of Termination as hearsay.  The Court overrules the objection because the Court determines the document may be presented in a form that would be admissible in evidence at trial.

results.  Defendants do not dispute that the day after her termination Ms. Hess brought in the results of her own drug test, which showed she was clean, and do not dispute they took no action to alter their decision regarding Ms. Hess's employment.  Defendants suggest that a day or two would be sufficient time for Ms. Hess to test clean, if in fact she would have failed the drug test the day Trooper Chastain requested she take it as she represented to him she would. Ms. Hess disputes this.

It is undisputed that Ms. Hess never had trouble staying awake while at work and cannot offer anytime she notified Mr. Lawson of her inability to sleep. (Dkt. No. 24, ¶ 34; Dkt. No. 18, Ex. I at 27:21 to 28:5).  It also is undisputed that, until the day of her termination, Mr. Lawson and Ms. Ables considered Ms. Hess to be a good employee and had no reason to believe she was a drug user.   (Dkt. No. 24, ¶ 28; Ex. C at 5:23 to 6:11; Ex. B at 14:5 to 14:9 and 18:24 to 19:4).

## II.    Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Id.* at 323. The burden then shifts to the nonmoving party to establish there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel,* 121 F.3d 364, 366 (8th Cir. 1997).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373,* 513 F.3d 854, 860 (8th Cir. 2008).  "The mere

existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Celotex,* 477 U.S. at 331.

### III.    Analysis

#### A.    Qualified Immunity

A government official sued in his individual capacity may raise the defense of qualified immunity. *Clay v. Conlee*, 815 F.2d 1164, 1169 (8th Cir. 1987). The doctrine of qualified immunity "protects a government official 'from liability for civil damages in so far as the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011). When qualified immunity is asserted as a defense, the court should conduct a two-prong inquiry to determine if the defense applies and should examine: "(1) 'whether the facts that a plaintiff has alleged. . . make out a violation of a constitutional right' and (2) whether the constitutional right violated 'was clearly established at the time of defendant's alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

#### B.    Fourth Amendment Claim

Ms. Hess contends there is a disputed issue of material fact regarding whether Mr. Lawson reached the decision to terminate Ms. Hess solely because she refused the drug test requested by Trooper Chastain, as Ms. Hess contends, or based on all of the information provided by Trooper Chastain in his written statement about his interactions with Ms. Hess that day, as defendants contend. As this is the summary judgment stage, the Court proceeds with its analysis of Ms. Hess's Fourth Amendment claim assuming that Ms. Hess's version of events controls – that she was terminated solely because she refused the drug test requested by Trooper Chastain. The Court also will examine the second prong of the analysis first. *See Pearson*, 555

U.S. at 236 (permitting the courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

The Supreme Court has explained the purpose of qualified immunity is to ensure government officials are "on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Objective legal reasonableness is the touch-stone of the determination. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Although it is not necessary for the very act in question to have been held unlawful for qualified immunity to attach, the unlawfulness of the act must be reasonably apparent in the light of preexisting law. *Id.* at 640.

As the Eighth Circuit Court of Appeals has explained:

"Whether the controlling legal principle has been clearly established is not to be determined at the most general level of legal abstraction[.]" *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Instead, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, the "salient question" for the court to ask is whether the state of the law at the time gave the officials "fair warning" their conduct was unlawful. *Hope*, 536 U.S. at 741. We answer this question by examining the "specific actions" of the official. *Norman v. Schuetzle*, 585 F.3d 1097, 1109 (8th Cir. 2009).

*Sisney v. Reisch*, 674 F.3d 839, 845-46 (8th Cir. 2012).

Ms. Hess does not contend that defendants requested she take a drug test prior to her termination. Instead, she contends that defendants, and specifically Mr. Lawson, terminated her solely because she refused the drug test requested by Trooper Chastain. It appears from Ms. Hess's complaint that she intends to assert a claim to be free from retaliatory discharge per the Fourth Amendment. However, Ms. Hess does not cite a single case that supports a Fourth Amendment retaliatory discharge claim. Instead, she admittedly cites only Fifth Amendment cases, no Fourth Amendment cases, in support of her claim. *See, e.g., Ferguson v. City of*

*Charleston,* 532 U.S. 67, 72 (2001); *Uniform Sanitation Men Association v. Commissioner of Sanitation of City of New York,* 392 U.S. 280 (1968); *Garner v. Broderick,* 392 U.S.273 (1968); *Garrity v. New Jersey,* 385 U.S. 493 (1967).  The protections of the Fifth Amendment do not apply when a party is asked to provide a urine sample for a drug screen. *Hendricks v. Swenson*, 456 F.2d 503, 506-07 (8th Cir. 1972) (determining that the petitioner's constitutional rights were not violated by the use of a videotape with the petitioner's picture and voice, which was freely and voluntarily given to police, ruling "this no more incriminates him than the taking of still pictures or blood or urine samples.   Such procedure does not violate the Fifth Amendment.")(citing *Schmerber v. California*, 384 U.S. 757, 760-65 (1966); *United States v. Kee Ming Hsu*, 424 F.2d 1286, 1290 (3d Cir. 1970), *cert. denied* 402 U.S. 982 (1971); *United States v. Amorosa*, 167 F.2d 596 (3d Cir. 1948)).

Further, unlike the cases Ms. Hess cites, defendants in this case are not alleged to have requested that Ms. Hess submit to a drug test, to have coerced her into submitting to a drug test, or to have threatened to terminate her in advance if she refused the drug test. *See, e.g., Lesher v. Reed*, 12 F.3d 148 (8th Cir. 1994) (determining plaintiff stated a Fourth Amendment unreasonable seizure claim based on allegations his employer the police department removed a dog from his home after threatening plaintiff with termination if he did not allow the officers to take the dog).   Instead, after third party Trooper Chastain requested Ms. Hess take the drug test and reported her refusal to her employer, her employer terminated her.

Given the legal and factual differences in the cases Ms. Hess cites and the case at bar, this Court determines that there is no Fourth Amendment right implicated by defendants' alleged conduct.  The Court also determines that, even if there is a Fourth Amendment right implicated by Ms. Hess's claims, it was not clearly established at the time of defendants' alleged

misconduct.  Therefore, defendants are entitled to qualified immunity on Ms. Hess's Fourth Amendment claims.

### C.     Fifth Amendment Claim

Because the protections of the Fifth Amendment do not apply when a party is asked to provide a urine sample for a drug screen, this Court determines that defendants are entitled to summary judgment on Ms. Hess's Fifth Amendment claims.  *See Hendricks,* 456 F.2d at 506-07. The facts as alleged by Ms. Hess and the summary judgment record when viewed in the light most favorable to Ms. Hess do not support a Fifth Amendment claim.  Even if these facts are deemed to support a Fifth Amendment claim, defendants are entitled to qualified immunity on the claim because the right allegedly violated was not clearly established at the time of defendants' alleged misconduct.

### D.     Fourteenth Amendment Claims

Ms. Hess claims a violation of the Fourteenth Amendment but does not specify the precise nature of her allegations.  Defendants move to dismiss these claims or, in the alternative, for summary judgment on Ms. Hess's Fourteenth Amendment claim under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).[5]  The Court denies this motion as it relates to Ms. Hess's liberty claim and substantive-due-process and procedural-due-process claims but grants the motion as it relates to any other alleged Fourteenth Amendment claim Ms. Hess contends she makes against defendants.  She includes no recitation of the elements of any other Fourteenth Amendment claims or further factual enhancements of

---

[5] Ms. Hess had notice of defendants' motion and an opportunity to respond meaningfully to the motion by opposing the motion on legal grounds or by clarifying her factual allegations. *See Christiansen v. West Branch Community School District*, 674 F.3d 927, 938 (8th Cir. 2001)(discussing *Neitzke v. Williams*, 490 U.S. 319, 329 (1989), and the district court's ability to *sua sponte* dismiss a claim without any pending motion).

the allegations. *Ashcroft*, 556 U.S. at 677-78; *Twombly*, 550 U.S. at 557. The Court grants defendants' motion for summary judgment on Ms. Hess's Fourteenth Amendment liberty claim and substantive-due-process and procedural-due-process claims for other reasons, as explained below.

Ms. Hess's liberty claim fails because she has not demonstrated the elements of the claim; she offers no evidence defendants made any accusations public. *Crooks v. Lynch,* 557 F.3d 846,849 (8th Cir. 2009); *Stodghill v. Wellston School District,* 512 F.3d 472,476 (8th Cir. 2008).

As for Ms. Hess's substantive-due-process claim, giving her the benefit of all reasonable factual inferences to be drawn from the allegations in her complaint and the facts in the summary judgment record, the Court grants defendants' motion as to this claim. For a substantive-due-process claim, Ms. Hess's allegations must support the conclusion that the decision to fire her "shocks the conscience." *Young v. City of St. Charles, Missouri*, 244 F.3d 623, 628 (8th Cir. 2001). She "must allege that a government action was sufficiently outrageous or truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law." *Christiansen,* 674 F.3d at 937 (quoting *Young*, 244 F.3d at 628). The Eighth Circuit Court of Appeals has explained:

> This is a high standard, as "[s]ubstantive due process is concerned with violations of personal rights. . . so severe. . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amount to brutal and inhumane abuse of official power literally shocking to the conscience." *C.N. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)(alterations in original)(quotation omitted). "The Due Process Claus of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 340 (1976).

*Christiansen*, 674 F.3d at 937-38.  Ms. Hess has failed to meet this standard, and the Court grants

defendants' motion for summary judgment on Ms. Hess's substantive-due-process claim.

For a procedural-due-process claim, Ms. Hess's allegations must demonstrate she had a

property interest in continued employment.  *Eddings v. City of Hot Springs, Arkansas*, 323 F.3d

596, 601 (8th Cir. 2003).   Whether an employee's interest in her job rises to the level of a

constitutionally protected property right is a question of state law.  *Allen v. City of Pocahontas,*

*Arkansas*, 340 F.3d 551, 555 (8th Cir. 2003)(citing *Bd. of Regents of State Colleges v. Roth*, 408

U.S. 564, 577 (1972)).   Generally "Arkansas law recognizes two exceptions to the at-will

employment doctrine:  (1) where a personnel manual specifies that termination will only be for

cause and (2) where the employment agreement itself specifies that termination will only be for

cause."  *Allen*, 340 F.3d at 555 (citations omitted).  Arkansas also recognizes a limited exception

to the at-will doctrine when an employee "is fired in violation of a well-established public policy

of the state."  *St. Edward Mercy Medical Center v. Ellison*, 946 S.W.2d 726, 728 (Ark. Ct. App.

1997).  The Eighth Circuit has interpreted Arkansas law to find that certain language in a drug

testing policy coupled with a supervisors uncontested statements prior to termination that

employees will not be fired unless they refuse to take a drug test creates a genuine issue of

material fact as to whether employment is at-will.  *Qualls v. Hickory Springs Mfg. Co.*, 994 F.2d

505, 509 (8th Cir. 1993).

Ms. Hess asserts that, although she signed the acknowledgement that she was an at-will

employee, her status as an at-will employee was altered.  For purposes of analyzing this claim,

the Court will examine separately events allegedly occurring before and after Ms. Hess's

termination.

Giving Ms. Hess the benefit of all reasonable factual inferences to be drawn from the allegations in her complaint and the facts in the summary judgment record, the Court determines that, prior to and at the time of her termination, Ms. Hess was an at-will employee. Therefore, she did not have a property interest in her continued employment. *Skeets v. Johnson*, 816 F.2d 1213, 1214 (8th Cir. 1987). Without a property interest in her employment prior to and at the time of her termination, Ms. Hess had no property interest protected by the Fourteenth Amendment and was owed no process prior to her termination. *See Board of Regents of State Colleges*, 408 U.S. at 579.

If this Court accepts Ms. Hess's version of events as true for purposes of resolving this motion, she was terminated in a manner inconsistent with the drug testing policies as outlined in Ordinance No. 1629. (Dkt. No. 18, Ex. D). However, her termination was not inconsistent with the employment-at-will acknowledgment she executed. (Dkt. No. 18, Ex. B). Under Arkansas law, "[t]he provisions that convert employment to non-at-will share the commonality of expressly concerning termination and limiting the discretion of the employer to terminate employees by requiring consideration of objective criteria." *Hamilton v. Tenet Corp.*, 2008 WL 4217990, *3 (W.D. Ark. Sept. 12, 2008)(citing *Gladden v. Arkansas Children's Hosp.*, 728 S.W.2d 501 (Ark. 1987)). "The Arkansas Supreme Court has recognized that 'an express provision against termination for cause' in a personnel manual may alter an employee's at-will status. It has also admonished that 'implied provision against the right to discharge is not enough.'" *Binkley v. Entergy Operations, Inc.*, 2009 WL 1544283, *9 (E.D. Ark. June 3, 2009)(internal citations omitted). The Court determines that no language in the summary judgment record converted Ms. Hess's employment from at-will to non-at-will prior to or at the time of her termination.

Arkansas's public policy exception to employment at-will only covers acts in the public interest.  The public policy exception "is not meant to protect merely private or proprietary interests." *Sterling Drug, Inc. v. Oxford*, 743 S.W2d 380, 385 (Ark. 1988).  Ms. Hess's refusal to take Trooper Chastain's requested drug test was not an act done for the good of the public. *See Hamilton*, 2008 WL 4217990 at *4.  Further, although the City of Stuttgart adopted the Arkansas Volunteer Testing Program, the City of Stuttgart did not request the drug test or rely on a positive test when terminating Ms. Hess, so those statutes even though cited by Ms. Hess, are inapplicable.  *See* Ark. Code Ann. § 11-14-101 *et seq*.

As for events allegedly occurring post-termination, Ms. Hess contends her at-will employment status was altered when she relied on an alleged statement made by Mr. Lawson. Ms. Hess cites *Qualls* in support of her assertion that "oral statements by a supervisor reassuring employees that they would not be fired immediately for failing a drug test gives rise to a Due Process Claim as well." (Dkt. No. 25).

In *Qualls*, Hickory Springs fired Peggy Sue Qualls for refusing or failing to submit to a drug test.  994 F.2d at 505.  Prior to her termination, Ms. Qualls's supervisors made uncontested statements that Ms. Qualls and other employees would not be fired unless they refused the drug test.  Ms. Qualls claimed that Hickory Springs's drug testing policy statements included termination "for cause" provisions and her reliance on those provisions modified her status as an at-will employee.  The Eighth Circuit Court of Appeals determined that Hickory Springs fired Qualls pursuant to Rule 15 of its Rules of Conduct which stated as grounds for termination the "[r]efusal to submit to a drug test or delaying, tampering, diluting, or otherwise altering test specimens. . . ."  *Id*. at 507.  The Court concluded that "[t]his rule, taken in conjunction with the uncontested statements of Hickory Springs's supervisors that Qualls and others would not be

fired unless they refused the test, constitutes a promise on which the employees. . . relied" thereby modifying Ms. Qualls's at-will employment status with regard to her employer's drug testing policy. *Qualls*, 994 F.2d at 509. Because there were disputed issues of fact regarding whether Ms. Qualls violated Rule 15, the grant of summary judgment was reversed and that part of the case was remanded for a trial on the merits. *Id.* Ms. Qualls sued for wrongful discharge and the tort of outrageous conduct; she did not allege a constitutional violation. *Id.* at 506.

There are disputed issues of fact regarding whether the conversation Ms. Hess claims she had with Mr. Lawson occurred at all and what precisely was said during the conversation, but there can be no dispute about when the conversation occurred. Viewing the evidence in the light most favorable to Ms. Hess and drawing all reasonable inferences in her favor, this Court determines that the conversation Ms. Hess claims she had with Mr. Lawson altering her at-will employment status occurred post-termination. In her deposition, she confirms she initiated this discussion after her employment had already been terminated by Mr. Lawson. Unlike in *Qualls*, there is no allegation these representations were made by Ms. Hess's employer prior to termination of employment.

Ms. Hess testified that, after being fired, she asked Mr. Lawson what if she would have her own drug test performed. She claims he "said they'd have to honor it…." Ms. Hess admits that Mr. Lawson did not tell her she would get her job back if she came in with a clean test. However, she understood his comment to mean that she would get her job back if her test was clean. (Dkt. No. 24, Ex. F at 21:24 to 23:8).

This post-termination representation by Mr. Lawson then, at most, provided Ms. Hess with a post-discharge grievance procedure through which to have her termination reconsidered. "Courts have consistently held that a post-discharge grievance procedure can not alter an

employee's at-will employment." *Binkley v. Entergy Operations, Inc.*, 2009 WL 1544283, *9 (E.D. Ark. June 3, 2009). "Applying Arkansas law, we have repeatedly held that a handbook which provides a review procedure does not give rise to an expectation of continued employment, but rather only supports an expectation of a right to participate in the review procedure. . . . Because [plaintiff] was an employee at will, he enjoyed no protected right in continued employment. . . ." *Eddings v. City of Hot Springs*, 323 F.3d 596, 601 (8th Cir. 2003)(internal citations omitted). Here, Ms. Hess admits she had her own drug test performed the day after she was terminated which showed that she was clean. (Dkt. No. 24). She presented those results to Mr. Lawson and Ms. Ables; defendants did not alter the decision made regarding her employment.

For these reasons, the Court determines that Ms. Hess possessed no property interest in her employment entitling her to due process before or at the time she was terminated. She was entitled to no Fourteenth Amendment protection, and defendants did not violate her rights under the Fourteenth Amendment when they terminated her.

Further, the Court determines defendants are entitled to qualified immunity on Ms. Hess's Fourteenth Amendment procedural-due-process claim because no reasonable official would know that terminating an employee under these particular circumstances would violate a clearly established Fourteenth Amendment right. If the alleged right existed at all, which this Court has determined it did not on these facts, it was not clearly established at the time of defendants' alleged misconduct.

### E.    Claims Against Mayor Maynard

Ms. Hess sued Mayor Maynard in her individual and official capacity. However, Ms. Hess does not mention Mayor Maynard in her complaint as a wrongdoer or direct participant in

the events leading to Ms. Hess's termination (Dkt. No. 2).   Instead, Ms. Hess attempts to establish Mayor Maynard's liability through a bystander or ratification theory.   She claims, at least in part, that the Mayor had the ability to reverse the decision terminating her employment yet did nothing.

Generally a supervisor may not be held liable for a § 1983 violation on the theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).   Certain exceptions apply, however.   A supervisor may be held liable for the unconstitutional conduct of her subordinates if she directly participated in the constitutional violation.   *Webster v. Gibson*, 913 F.2d 510, 514 (8th Cir. 1990).   She may be held liable when she fails or refuses to intervene when a constitutional violation takes place in her presence.   *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981).   A supervisor may also be held liable if her failure to train or supervise the offending actor caused the deprivation.   *Tilson v. Forrest City Police Department*, 28 F.3d 802, 806 (8th Cir. 1994).   Additionally, a supervisor may be held liable if she created a policy or custom under which the unconstitutional practice occurred.   *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Ms. Hess cites to case law in her response that is inapplicable and not persuasive.   She cites *Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995), in which the Fifth Circuit Court of Appeals determined an officer who was present at the scene and did not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under § 1983 under a theory of bystander liability.   In this case, Mayor Maynard took no part in Ms. Hess's termination and did not know that Ms. Hess had been terminated until after the fact. (Dkt. No. 18, Ex. F at 5:9 to 5:25).   Further, there are no allegations or references in Ms. Hess's pleadings that support her claim Mayor Maynard ratified Ms. Hess's termination due to an

unconstitutional policy or custom or ratified the decision in such a way to violate Ms. Hess's constitutional rights.

Giving Ms. Hess the benefit of all reasonable factual inferences to be drawn from the allegations in her complaint and the facts in the summary judgment record, the Court determines that defendants are entitled to summary judgment on Ms. Hess's claims against Mayor Maynard in her individual capacity. Further, for the reasons stated earlier when examining the Fourth, Fifth Amendment, and Fourteenth Amendment procedural-due-process claims, Mayor Maynard is entitled to qualified immunity in her individual capacity because those constitutional rights claimed by Ms. Hess, if they existed at all, were not clearly established at the time of these events.

**F.      Official Capacity Claims And Claim Against The City of Stuttgart**

An official capacity suit is the equivalent of a suit against the governmental entity of which the individual is an agent and imposes liability on the entity which the individual represents; such claims require proof of an official policy or custom as the cause of the constitutional deprivation. 42 U.S.C. § 1983 (1996). A plaintiff must include allegations, references, or language by which one could infer the conduct alleged resulted from an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe v. Sch. Dist. of Northfolk,* 430 F.3d 605, 614 (8th Cir. 2003)).

Defendants are entitled to judgment as a matter of law on Ms. Hess's official capacity claims and her claim against the City of Stuttgart. As an initial matter, the Court has found no constitutional violations, and, therefore, the governmental entities cannot be held liable. *See Olinger v. Larson*, 134 F.3d 1362, 1367 (8th Cir. 1998) (quoting *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994)("The City cannot be liable whether on a failure to train theory or a

municipal custom or policy theory, unless [an individual defendant] is found liable on the underlying substantive claim.").

Even if there were constitutional violations, Ms. Hess has failed to create a genuine issue of material fact with respect to the official-capacity defendants' alleged liability for the acts of the individual defendants. *Respondeat superior* is not a permissible theory for holding a governmental entity liable for the unconstitutional acts of its employees. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). Instead, the governmental entity is liable under § 1983 when "a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" can be causally related to the allegedly unconstitutional conduct of its employees. *Id.* Liability may be based on "constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision-making channels." *Id.* at 690-91. *See also Ware v. Jackson County, Missouri*, 150 F.3d 873 (8th Cir. 1998)(examining the requirements to establish official policy and to establish custom or usage).

"[I]naction or laxness can constitute government custom if it is permanent and well settled." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994) (citation omitted). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of [alleged] misconduct and deliberately failed to take remedial action." *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996) (citations omitted). A governmental body may also be held accountable based on a failure to train or supervise adequately under certain circumstances. *City of Canton v. Harris*, 489 U.S. 378 (1989) (summarizing the circumstances under which liability for hiring and training practices may attach under § 1983).

In this case, Ms. Hess has identified no policy or practice of wrongdoing causally related to the unconstitutional conduct she alleges.  She identifies no instance of inadequate hiring, training, or supervising of Mr. Lawson or Ms. Ables.  She cites to *Williams v. Butler,* 863 F.2d 1398, 1401 (8th Cir. 1988), for the proposition that a decision by a municipal policymaker on a single occasion may result in municipal liability for actions it officially sanctioned or ordered.  However, unlike the facts of *Williams*, there is no indication in the summary judgment record and no allegation by Ms. Hess in her complaint that Mr. Lawson was the ultimate policy maker for the City of Stuttgart or had the authority to establish final employment policy for the City of Stuttgart.  "Although a single act of a city official 'whose acts or edicts may fairly be said to represent official policy' may give rise to municipal liability under § 1983, *Monell*, 436 U.S. at 694, a municipality will only be liable under § 1983, where a city official 'responsible for establishing final policy with respect to the subject matter in question' makes a deliberate choice among competing alternatives that results in the violation of constitutional rights.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)."  *Granada v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007).

Giving Ms. Hess the benefit of all reasonable factual inferences to be drawn from the allegations in her complaint and the facts in the summary judgment record, the Court determines that defendants are entitled to summary judgment on Ms. Hess's official-capacity claims and claim against the City of Stuttgart.

### G.    Section 504 Rehabilitation Act

The Rehabilitation Act of 1973 creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance, including employment discrimination in such programs. 29 U.S.C § 794(a) (1973).  There is not

a federal funding requirement for the Americans with Disabilities Act, but it is otherwise similar in substance to the Rehabilitation Act, and "cases interpreting either are applicable and interchangeable." *Allison v. Department of Corrections,* 94 F.3d 494, 497 (8th Cir.1996).

To establish a *prima facie* case under section 504 of the Rehabilitation Act, Ms. Hess must prove that:   (1) she is a qualified individual with a disability, (2) she was denied the benefits of a program or activity of a public entity which receives federal funds, and (3) she was discriminated against based on this disability. *See Gorman,*152 F.3d at 911.  This Act imposes a requirement that a person's disability serve as the *sole impetus* for defendant's adverse action against plaintiff.  *Wojewski v. Rapid City Reg'l Hosp. Inc.,* 450 F.3d 338, 344 (8th Cir. 2006) (quoting *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1029 n.5 (8th Cir. 1999)).

The ADA prohibits discrimination by an employer "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a).  Under the ADA, a person is disabled if she has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. §12102(1) (2000) (amended 2008).  Under the ADAAA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Ms. Hess alleges that she has been regarded as a person with a disability and has been discriminated against in violation of Section 504 of the Rehabilitation Act as amended.  (Dkt. No. 2).  "An individual meets the requirement of 'being regarded as having such an impairment' if [she] establishes that [she] has been subjected to an action prohibited under this chapter

20

because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," as long as the impairment is not transitory or minor.  42 U.S.C.A. § 12102(3)(A)-(B).

In her complaint, Ms. Hess alleges that her disability is insomnia.  Ms. Hess has not addressed the defendants' argument that she failed to demonstrate that her alleged disability was the *sole impetus* for the adverse employment decision.  *Wojewski*, 450 F.3d at 344 (citing *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 n.5 (8th Cir. 1999), and § 794(a)).  Under the Rehabilitation Act, plaintiff's disability must be the sole impetus for termination.  *Id.*  She does not offer evidence to establish that insomnia was the sole impetus for her termination anywhere in her complaint or in response to defendants' motion for summary judgment, even when the entire summary judgment record is viewed with all reasonable inferences drawn in her favor.  Because Ms. Hess fails to establish this necessary element, defendants are entitled to summary judgment on her Rehabilitation Act claim as it relates to insomnia.

Additionally, although Ms. Hess claims in her complaint that she has insomnia and is incapable of sleeping, Ms. Hess admits she never had trouble staying awake while at work and cannot offer anytime she notified Mr. Lawson, her supervisor, of her inability to sleep.  (Dkt. No. 24, ¶ 34; Dkt. No. 18, Ex. I at 27:21 to 28:5).  There is no support in the record for the Court to determine her employer regarded her as disabled due to insomnia or for the Court to determine her employer discriminated against her due to her insomnia.  There was no mention of her inability to sleep during her termination. For this additional reason, defendants are entitled to summary judgment on Ms. Hess's Rehabilitation Act claim as it relates to insomnia.

Ms. Hess also claims in her response to the motion for summary judgment that, based upon Trooper Chastain's report of her alleged drug use, she was regarded as a person with a

disability under Section 504 for her alleged drug use.   Defendants object to what they characterize as a belated claim, made first at the summary judgment stage.   Reviewing the record before the Court, the Court agrees this is a belated claim not identified by Ms. Hess in the pleadings before the Court.   As to the merits of the claim, drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA. *Thompson v. Davis,* 295 F.3d 890, 896 (9th Cir. 2002). However, the ADA protects only individuals who are no longer using illegal drugs. *Campbell v. Minneapolis Public Housing Authority,* 168 F.3d 1069, 1072 n. 1 (8th Cir.1999).

The ADA states that the term "'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."   42 U.S.C.A. 12210(a).   The rules of construction applicable to this subsection explain:   "Nothing in [this subsection] shall be construed to exclude as an individual with a disability an individual who – (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use; (2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or (3) is erroneously regarded as engaging in such use, but is not engaging in such use; except that it shall not be a violation of this chapter for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in paragraph (1) or (2) is no longer engaging in the illegal use of drugs; however, nothing in this section shall be construed to encourage, prohibit, restrict, or authorize the conducting of testing for the illegal use of drugs."   42 U.S.C.A. 12210(b).   "The policy objective is to prevent employers from firing persons solely on the basis of their past drug use." *Wormley*

*v. Arkla, Inc.*, 871 F.Supp. 1079, 1080 (E.D. Ark. 1994) (examining the definition of "current drug user"). *See also* 29 C.F.R. § 1630.3.

On these facts, if Ms. Hess's version of events is accepted as true for resolving this motion, Mr. Lawson discharged her solely for her refusal to submit to Trooper Chastain's request for a drug test. The other information provided by Trooper Chastain should not be considered to evaluate her claim. In other words, Ms. Hess contends that her employer firing her solely for refusing to submit to Trooper Chastain's request for a drug test without more should give rise to a "regarded as" disability claim for drug use under the Rehabilitation Act.

The parties agree that, until the day of her termination, Mr. Lawson and Ms. Ables considered Ms. Hess to be a good employee and had no reason to believe she was a drug user. (Dkt. No. 24, ¶ 28; Ex. C at 5:23 to 6:11; Ex. B at 18:24 to 19:4). Based on this, defendants could not have terminated Ms. Hess for past drug use – the parties agree that "until the day of her termination" defendants "had no reason to believe she was a drug user." If defendants terminated Ms. Hess for drug use at all, they regarded her as a current drug user on the day of her termination. As such, she would not qualify for protection under the ADA. An "'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C.A. 12210(a).

Further, when the summary judgment record as a whole is considered, Trooper Chastain's statement may be considered. Ms. Hess does not dispute that she told Trooper Chastain she refused the drug test because she would flunk it. Trooper Chastain's statement also includes many other instances that provide a basis to terminate Ms. Hess, separate and apart from any alleged drug use. Alleged drug use then would not be the sole impetus for Ms. Hess's discharge. The Rehabilitation Act does not "prohibit an employer from discharging an employee

who commits a crime or otherwise engages in improper conduct when the improper conduct, rather than the alleged addiction, is the reason for discharge." *Grimes v. U.S. Postal Serv.,* 872 F.Supp. 668, 676 (W.D. Mo. 1994) *aff'd*, 74 F.3d 1243 (8th Cir. 1996).

For all of these reasons, the Court grants defendants summary judgment on Ms. Hess's Rehabilitation Act claim.

### H.    Arkansas Civil Rights Act Claims

Ms. Hess has filed claims under the Arkansas Civil Rights Act ("ACRA"), and defendants move for summary judgment on those claims.  The "ACRA provides a cause of action for damages for 'the deprivation of any rights . . . secured by the Arkansas Constitution' by any person acting under color of state law." *Hill v. Tucker*, 2011 WL 3418656, *5 (E.D. Ark. 2011)(quoting Ark. Code Ann. § 16-123-105(a)).  "The statute provides that, in construing ACRA, 'a court may look for guidance to state and federal decisions interpreting . . . 42 U.S.C. § 1983.'" *Id.* (quoting Ark. Code Ann. § 16-123-105(c)).  Defendants state that "the federal decisions, or lack thereof, establishing that summary judgment is appropriate can be used to guide this Court's decision" with regard to Ms. Hess's ACRA claims.

Both defendants and Ms. Hess cite only federal cases interpreting federal law in their briefing.  No party argues that the ACRA requires separate analysis as to any aspect of the claims under the Fourth, Fifth, or Fourteenth Amendments.  Accordingly, the parties have waived the right to argue that the ACRA provides greater than, or lesser than, its federal counterparts. *See Lewis v. Jacks*, 486 F.3d 1025, 1029-30 (8th Cir. 2007)(rejecting plaintiff's argument on appeal that ACRA and Arkansas Constitution provided more protection than federal claims under § 1983, noting that ACRA claim had been disposed of on summary judgment with federal claim even though there was no separate discussion of the state law claim).  The Court will therefore

not discuss the ACRA separately.  Its rulings on Ms. Hess's § 1983 claims apply equally to her ACRA claims.

### IV.    Conclusion

For the reasons stated, the Court grants defendants' motion for summary judgment, and Ms. Hess's claims are dismissed with prejudice.

SO ORDERED this ___6th___ day of September, 2012.

Kristine M. Baker
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE